## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

EUGENE VALENCIA,

     Plaintiff,

v.                                   No. CIV 06-1259 JB/RHS

COLORADO CASUALTY INSURANCE
COMPANY, a Colorado Corporation,

     Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant Colorado Casualty Insurance Company's Motion for Partial Summary Judgment that Colorado Law Applies to Determine the Amount of Benefits to Which the Plaintiff is Due, filed May 11, 2007 (Doc. 20)("CCIC's Motion"); and (ii) the Plaintiff's Counter-Motion for Partial Summary Judgment Re: The Application of New Mexico Law, filed July 2, 2007 (Doc. 36)("Valencia's Motion"). The primary issue is whether the Court should apply Colorado or New Mexico law to determine the amount of benefits that Plaintiff Eugene Valencia is due under an Uninsured Motorist policy he purchased from Defendant Colorado Casualty Insurance Co. ("CCIC"). Because New Mexico choice-of-law doctrines require, as a general rule, the Court to apply the law of the forum in which the harm occurred, and because the Court does not believe that Valencia has advanced a public policy ground sufficient to overcome that requirement, the Court will grant CCIC's motion and apply Colorado law.

### FACTUAL BACKGROUND

Valencia operates an insulation business, Valencia Insulation, in Farmington, New Mexico. See Defendant Colorado Casualty Insurance Company's Brief in Support of its Motion for Partial Summary Judgment that Colorado Law Applies to Determine the Amount of Benefits to Which the

Plaintiff is Due ¶ 1, at 2, filed May 11, 2007 (Doc. 21)("CCCI's Memorandum"); Id., Exhibit A, Commercial Package Policy at 1 ("Policy"); Brief in Support of Plaintiff's Counter-Motion for Partial Summary Judgment Re: The Application of New Mexico Law at 2, filed July 2, 2007 (Doc. 37)("Valencia's Memorandum").[1]  On June 23, 2004, CCIC issued Valencia a commercial auto insurance policy to cover eight trucks Valencia used in his insulation business.  See CCIC's Memorandum ¶ 1, at 2; Policy at 5.  The effective policy period was from May 29, 2004 to May 29, 2005.  See Policy at 1.

The policy CCIC issued to Valencia included uninsured motorist ("UM") coverage in accordance with New Mexico law.  See CCIC's Memorandum ¶ 2, at 3; Id., Exhibit B, New Mexico -- Uninsured Motorists Coverage Endorsement ("UM Endorsement").  The UM coverage provides that CCIC will "pay all sums the 'insured' is legally entitled to recover as damages from the owner or driver of an 'uninsured motor vehicle.'" UM Endorsement at 1.  The policy covered Valencia's family members.  See CCIC's Memorandum ¶ 5, at 3; Policy at 1; UM Endorsement at 2.  The policy contained an aggregate amount of $800,000.00 in UM coverage.  See Valencia's Memorandum ¶ 1, at 3; Defendant Colorado Casualty Insurance Company's Reply Brief in Support of its Motion for Partial Summary Judgment that Colorado Law Applies to Determine the Amount of Benefits to Which the Plaintiff is Due and Response to the Plaintiff's Counter-Motion for Partial Summary Judgment Re: The Application of New Mexico Law at 1, filed July 20, 2007 (Doc. 40)("CCIC's Reply"); Policy at 3.

On December 30, 2004, Valencia's daughter, Anne-Marie Valencia, was killed in an

_____

[1]In his Memorandum, Valencia states that he adopts the Undisputed Facts and Exhibits set forth in CCIC's Memorandum and incorporates the same into his pleadings.  See Valencia's Brief at 2.

automobile accident that occurred in Colorado -- approximately four miles from the Colorado/New Mexico border.  <u>See</u> CCIC's Memorandum at 1; <u>id.</u> ¶ 9, at 3.  Anne-Marie was one of four passengers traveling in a pickup truck that Gilbert Lucero was driving.  <u>See</u> CCIC's Memorandum, Exhibit C, State of Colorado Traffic Accident Report ("Police Report").

## **PROCEDURAL HISTORY**

On December 28, 2006, Valencia filed a Complaint for damages against CCIC in association with the December 30, 2004 accident.  <u>See</u> Complaint and Jury Demand, filed December 28, 2006 (Doc. 1)("Complaint").  Valencia's Complaint asserts an uninsured motorist claim based on breach of contract, <u>see id.</u> ¶¶ 24-42, at 4-6, and a claim for bad faith insurance practices, <u>see id.</u> ¶¶ 43-50, at 6-8.  Valencia's Complaint acknowledges that there are differences in New Mexico and Colorado law with regard to recovery of damages resulting from a wrongful death.  <u>See id.</u> ¶ 28, at 5 (stating that neither New Mexico statutes or case law limit the recovery of damages resulting from wrongful death); <u>id.</u> ¶ 32, at 5 (stating Colorado statutory law limits recovery of noneconomic damages to $366,250.00 except in cases where the wrongful death constitutes a felonious killing).

CCIC filed its motion for partial summary judgment on May 11, 2007.  CCIC requests the Court enter partial summary judgment on its behalf declaring that Colorado law controls the determination regarding the amount of benefits Valencia is owed.  <u>See</u> CCIC's Motion at 1. Valencia filed a response to CCIC's motion for partial summary judgment on June 30, 2007.  <u>See</u> Response to Defendant's Motion for Partial Summary Judgment and Counter-Motion for Partial Summary Judgment Re: The Application of New Mexico Law, filed June 30, 2007 (Doc. 34)("Valencia's Response").  Valencia styled his Response as both his Response to CCIC's Motion and as a counter-motion for partial summary judgment requesting that the Court apply New Mexico

law to determine the amount of benefits Valencia should receive in this case.  See id. at 1.

Valencia filed his counter-motion requesting that the Court enter partial summary judgment on his behalf and apply New Mexico law in determining CCIC's liability on July 2, 2007.  See Valencia's Motion at 3.  The document that Valencia filed as his counter-motion, and the supporting memorandum that he filed in support of his counter-motion, were identical to the documents he filed as his response to CCIC's motion on June 30, 2007.

On July 20, 2007, CCIC filed its Reply brief addressing the arguments Valencia raised in his counter-motion.  On July 27, 2007, CCIC filed a notice that briefing was complete on its motion for summary judgment and that the issue was ripe for adjudication.  See Notice of Completion of Briefing, filed July 27, 2007 (Doc. 41).  Valencia filed a response to CCIC's notice of completion of briefing on August 1, 2007.  See Response to Defendant's Notice of Completion of Briefing, filed August 1, 2007 (Doc. 42).  In his response, Valencia asserted that his counter-motion on the same issue was still pending, and that, under the Federal Rules of Civil Procedure and the Court's local rules, he had until August 6, 2007 to file a Reply.  See id. ¶¶ 1-2, at 1.  Valencia filed his Reply on August 6, 2007.  See Reply to Defendant's Response to Plaintiff's Counter-Motion for Partial Summary Judgment Re: The Application of New Mexico Law, filed August 6, 2007 (Doc. 47)("Valencia's Reply").

## STANDARD FOR DECIDING SUMMARY JUDGMENT MOTIONS

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The

opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party.  Id. at 249-50 (citations omitted).  Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment.  See Trevizo v. Adams, 455 F.3d 1155, 1159 (10th Cir. 2006).

The party seeking summary judgment has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case."  Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995))(internal quotations omitted).  Upon meeting that burden, the non-moving party must "identify specific facts that show the existence of a genuine issue of material fact."  Munoz v. St. Mary-Corwin Hosp., 221 F.3d at 1164 (citations and internal quotations omitted).  "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."  Id. (citations and internal quotations omitted).

The mere existence of a scintilla of evidence in support of the plaintiff's position is not sufficient; there must be evidence on which the fact finder could reasonably find for the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted).  "In a response to a motion for summary judgment, a party cannot rest on ignorance of the facts, on speculation, or on suspicion and

may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir. 1996).

When evaluating a motion for summary judgment, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  See Sigmon v. CommunityCare HMO, Inc., 234 F.3d 1121, 1124-25 (10th Cir. 2000). Moreover, the court may consider only admissible evidence when ruling on a motion for summary judgment.  See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

Finally, "the fact that both parties have moved for summary judgment does not permit the entry of a summary judgment if disputes remain as to material facts." Harrison W. Corp. v. Gulf Oil Co., 662 F.2d 690, 692 (10th Cir. 1981).  On the other hand, "cross motions for summary judgments do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties." Renfro v. Emporia, 948 F.2d 1529, 1534 (10th Cir. 1991).

## NEW MEXICO RULE REGARDING CHOICE-OF-LAW IN TORT CASES

In a diversity action, federal courts apply the substantive law of the forum state, including the state's choice-of-law rules. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Pepsi-Cola Bottling Co. of Pittsburgh, Inc. v. Pepsico, Inc., 431 F.3d 1241, 1255 (10th Cir. 2005). "'The policy of New Mexico is to interpret insurance contracts according to the law of the place where the contract was executed,' which is referred to as lex loci contractus." State Farm Mut. Auto. Ins. Co. v. Ballard, 2002-NMSC-030, ¶ 7, 54 P.3d 537, 539 (quoting Shope v. State Farm Ins.

Co., 1996-NMSC-052, ¶ 10, 925 P.2d 515, 517).  "In determining which jurisdiction's law should apply to a tort action, New Mexico courts follow the doctrine of lex loci delicti commissi -- that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred." Terrazas v. Garland & Loman, Inc., 2006-NMCA-111, ¶ 12, 142 P.3d 374, 377 (citing First Nat'l Bank in Albuquerque v. Benson, 89 N.M. 481, 481, 553 P.2d 1288, 1288 (Ct. App. 1976)).  With reference to insurance coverage for automobile accidents, the New Mexico Supreme Court has specified that the contract law of the jurisdiction where the contract was executed governs the interpretation of the contract, but that "the rights and liabilities of persons injured in automobile accidents are determined under the laws of the state where the accident happened."  State Farm Auto. Ins. Co. v. Ovitz, 117 N.M. 547, 549, 873 P.2d 979, 981 (1994).  See Demir v. Farmers Tex. County Mut. Ins. Co., 2006-NMCA-091, ¶ 7, 140 P.3d 1111, 1113 ("[T]he law of the place of the accident governs Plaintiff's right to recover from the owner or driver of the vehicle that ran him off the road.").

The Supreme Court of New Mexico has recognized an exception to its general "place of the wrong" rule in cases where "such application would violate New Mexico public policy."  Torres v. New Mexico, 119 N.M. 609, 613, 894 P.2d 386, 390 (1995).  New Mexico conflict-of-law doctrine reflects "a desire for [] greater certainty . . . tempered by recognition that important policy considerations cannot be ignored."  Louis v. United States, 54 F. Supp. 2d 1207, 1211 (D.N.M. 1999)(Black, J.)(quoting Gilmore v. Gilmore (In re Estate of Gilmore), 1997-NMCA-103, ¶ 21, 946 P.2d 1130, 1136).  The New Mexico Court of Appeals has explained that New Mexico courts "begin with a strong presumption in favor of application of the place-of-the-wrong rule, but we will not close our eyes to compelling policy arguments for departure from the general rule in specific

circumstances." <u>Gilmore v. Gilmore (In re Estate of Gilmore)</u>, 1997-NMCA-103, ¶ 21, 946 P.2d

at 1136.  <u>See</u> <u>Tuato v. Brown</u>, 85 Fed. Appx. 674, 676 (10th Cir. 2003)(observing that New Mexico

caselaw "confirms the strong presumption that New Mexico courts apply <u>lex</u> <u>loci</u> in tort cases").

## ANALYSIS

The issue before the Court is a narrow one.  The parties agree that the general rule in New

Mexico is that the rights and liabilities of individuals injured in automobile accidents are determined

under the laws of the state where the accident happened and that the accident that is the subject of

this case occurred in Colorado.  The parties also agree that the Supreme Court of New Mexico has

recognized an exception to this rule when applying the law of a foreign state would violate New

Mexico public policy.  The question before the Court is whether applying Colorado law would

offend New Mexico public policy to the extent that the Court should apply New Mexico law.

Because the Court concludes that Valencia has not advanced a public policy ground sufficient to

overcome the general rule, the Court will grant CCIC's motion and apply Colorado law to determine

the amount of benefits to which Valencia is entitled.

## I.   NEW MEXICO CASELAW DOES NOT REQUIRE THE APPLICATION OF NEW MEXICO LAW.

Valencia argues that there are meaningful differences between New Mexico's and

Colorado's schemes for recovery in tort and wrongful death actions.  Valencia notes that the New

Mexico Wrongful Death Act, N.M. Stat. Ann. §§ 41-2-1 to -4, does not expressly limit the amount

of compensation that a decedent's beneficiaries are legally entitled to recover.  <u>See</u> Valencia's

Memorandum at 3.  Colorado, on the other hand, limits the recovery of damages for noneconomic

loss or injury to $250,000.00, unless the court finds justification for additional damages by clear and

convincing evidence; in any case, the amount of such damages shall not exceed $500,000.00.[2]  See Colo. Rev. Stat. §§ 13-21-203(1)(a) and 13-21-102.5(3)(a).  Valencia asserts that, "unlike New Mexico law, Colorado limits and restricts, in certain circumstances, what an insured is legally entitled to recover from a UM/UIM motorist resulting from a wrongful death."  Valencia's Memorandum at 4.

Valencia also cites a number of New Mexico cases that have invalidated contractual provisions that limited an insured's right to collect UM benefits.  See Valencia Memorandum at 4 (citing Stinbrink v. Farmers Ins. Co. of Ariz., 111 N.M. 179, 180, 803 P.2d 664, 665 (1990)(invalidating a provision excluding punitive damages from UM benefits); Sandoval v. Valdez, 91 N.M. 705, 708-09, 580 P.2d 131, 134-35 (Ct. App. 1978)(holding that insurance contract's one-year limit on insured's right to sue for UM damages was invalid because it conflicted with New Mexico's three-year statute of limitations applicable to personal injury actions)).  Valencia maintains that these cases stand for the proposition that, "under New Mexico law, the UM/UIM damages an insured is legally entitled to recover is limited only by the applicable insurance policy limits."  Valencia's Memorandum at 4.  He asserts that, "because of its public policy of unrestricted compensation for innocent accident victims and the beneficiaries, and unrestricted benefits for UM/UIM coverage up to policy limits, New Mexico has a much more significant interest in having its law apply than does Colorado."  Id. at 5.

---

[2]In his briefing, Valencia cites Colo. Rev. Stat. § 13-21-203 and states that, "[i]n Colorado, recovery of non-economic damages is limited to $366,250, except in cases where the tortfeasor's conduct was reckless (which constitutes a 'felonious killing')."  Valencia's Memorandum at 4.  The Court has reviewed the substantive and damages provisions of the Colorado Wrongful Death Act, and is uncertain how Valencia arrived at his figure of $366,250.00.  The Court notes that the statute provides an exception for deaths that result from felonious killings, in which event there is no limitation on the recovery of damages.  See Colo. Rev. Stat. § 13-21-203(1)(a).

Although Valencia has cited a number of New Mexico cases that acknowledge the public policy exception to the place-of-harm rule, he has cited only one case, Torres v. New Mexico, that subsequently applied the exception in the context of a tort action.  Cf. State Farm Auto. Ins. Co. v. Ovitz, 117 N.M. at 549, 873 P.2d at 981 (applying Hawaiian law in an UM coverage action resulting from an automobile accident that occurred in Hawaii); Zamora v. Smalley, 68 N.M. 45, 47, 358 P.2d 362, 363 (1961)(applying Colorado law in a negligence action resulting from an automobile accident that occurred in Colorado); Demir v. Farmers Tex. County Mut. Ins. Co., 2006-NMCA-091, ¶ 7, 140 P.3d at 1113 (applying New Mexico law to determine whether plaintiff would be able to recover UM benefits resulting from an automobile accident that occurred in New Mexico where the plaintiff and insurance company were both Texas citizens and the contract was executed in Texas); Gilmore v. Gilmore (In re Estate of Gilmore), 1997-NMCA-103, ¶ 31, 946 P.2d at 1139 (applying Texas law to the distribution of proceeds from a wrongful death action resulting from a motorcycle accident that occurred in Texas where the beneficiaries were residents of New Mexico, Washington, and Idaho); First Nat'l Bank in Albuquerque v. Benson, 89 N.M. at 481, 553 P.2d at 1288 (applying New Mexico law to a wrongful death action resulting from an airplane crash in which all of the decedents were Missouri residents and the plane was traveling from Nevada to Missouri).  In Torres v. New Mexico, the plaintiffs raised a wrongful death action against the Albuquerque Police Department ("APD") asserting that APD officers' negligent investigation of leads that citizens called in allowed a gunman to escape to California where he shot and killed two individuals.  See 119 N.M. at 611-12, 894 P.2d at 388-89.  The Supreme Court of New Mexico in Torres v. New Mexico determined that the harm had occurred in California and acknowledged that New Mexico courts "generally follow[] the doctrine of lex loci delicti and appl[y] the law of the state in which the wrongful conduct

occurred." Id. at 613, 894 P.2d at 390.  Nevertheless, the Supreme Court reasoned that "the duties of law enforcement personnel are defined by the [New Mexico] Tort Claims Act and by decisional law," and concluded that "public policy dictates that New Mexico law determines the existence of duties and immunities on the part of New Mexico officials."  Id. (quoting Wittkowski v. New Mexico, 103 N.M. 526, 529, 710 P.2d 93, 96 (Ct. App. 1985)).

CCIC acknowledges that "New Mexico courts apply a public policy exception in some cases in which the usual choice-of-law rules would require the application of another forum's law," but disagrees with Valencia that the exception is applicable in this case.  CCIC's Reply at 2.  Moreover, CCIC maintains that the Supreme Court of New Mexico has already decided this issue in State Farm Automobile Insurance Co. v. Ovitz -- a case in which an insurer agreed to "pay damages for bodily injury or property damage an insured is legally entitled to collect from the owner or the driver of an uninsured motor vehicle."  117 N.M. at 549, 873 P.2d at 981 (emphasis in original).

The plaintiffs in State Farm Automobile Insurance Co. v. Ovitz were New Mexico citizens who had been injured in an automobile accident while driving a rental car in Hawaii.  See id. at 548, 873 P.2d at 979.  The plaintiffs argued that, because Hawaii was a "no-fault" state, and therefore prohibited suit for pain and suffering, the owner of the vehicle that injured the plaintiffs was effectively uninsured.  See id.  The Supreme Court of New Mexico in State Farm Automobile Insurance Co. v. Ovitz premised its analysis by stating that "the rights and liabilities of persons injured in automobile accidents are determined under the laws of the state where the accident happened."  Id. at 549, 873 P.2d at 981.  The Court stated that, "[u]nder this rule of law, reference must be made to the statutes of Hawaii to determine whether the plaintiffs are 'legally entitled to collect' from [the owner of the other vehicle], and thereby entitled to uninsured motorist benefits

-11-

under the . . . policy."  Id.

In rejecting the plaintiffs' argument, the Supreme Court explained that "Hawaii's automobile insurance laws in effect at the time [the insured] was injured prevented [the plaintiffs] from filing suit for noneconomic damages.  Consequently, under Hawaiian law, [the plaintiffs] are not 'legally entitled to collect' such damages."  Id. at 550, 873 P.2d at 982.  The Supreme Court in State Farm Automobile Insurance Co. v. Ovitz summarized that, "[b]ecause [the plaintiffs'] insurance contract with [the insurer] requires that [they] be 'legally entitled to collect' damages in order to receive benefits under the uninsured motorist provision, they cannot recover such benefits under the policy." Id.

Valencia raises a number of distinct arguments in an attempt to distinguish his case from State Farm Automobile Insurance Co. v. Ovitz.  First, Valencia characterizes the issue in State Farm Automobile Insurance Co. v. Ovitz as whether the tortfeasor was "uninsured" or not; in other words, he maintains that the Supreme Court of New Mexico considered "the threshold question of whether Plaintiff had an uninsured claim at all."  Valencia's Memorandum at 7.  He states that, in this case, it is undisputed that he is entitled to UM coverage and the only question is "whether application of Colorado law, which potentially restricts those benefits, runs counter to New Mexico public policy." Id. at 8.

Valencia's framing of the issue in State Farm Automobile Insurance Co. v. Ovitz mischaracterizes the scope of the Supreme Court's analysis in that case and overlooks the express language of the opinion.  While the plaintiff in State Farm Automobile Insurance Co. v. Ovitz had argued that the owner of the automobile that injured him was "uninsured" for the purposes of his lawsuit, the Supreme Court clarified that the "appeal presents a single issue:  Whether the trial court

-12-

erred when it decided that [the plaintiff was] not entitled to uninsured motorist benefits under their

. . . automobile liability insurance policy."  117 N.M. at 548, 873 P.2d at 980.  The Supreme Court

explained that "[i]t was not a lack of insurance . . . that restricted the legal liability" of the driver that

injured the insured in <u>State Farm Automobile Insurance Co. v. Ovitz</u>; "it was the law of Hawaii that

had that effect."  <u>Id.</u> at 549, 873 P.2d at 981.

Valencia's second distinction rests on his contention that "New Mexico public policy

concerns were not implicated or violated by the application of Hawaiian law in <u>[State Farm</u>

<u>Automobile Insurance Co. v.] Ovitz</u>."  Valencia's Memorandum at 7.  Valencia's assertion is

premised on his understanding of Hawaii's compensation scheme for individuals injured in

automobile accidents.

> [W]hile Hawaiian law restricts an injured victim to only economic benefits, it
> automatically confers first-party benefits without regard to fault and possibly costly
> litigation.  These benefits to the insured are quid pro quo for the limitations on non-
> economic damages placed on the insured by Hawaiian law.  Such a trade-off does not
> violate the public policy of New Mexico.  To allow [the insured] recovery of non-
> economic damages after receiving the benefit of Hawaiian no-fault law would give
> him the best of both worlds and place him in a better position than New Mexico
> residents who are injured in New Mexico.

<u>Id.</u>  Valencia asserts that, because Colorado places a cap on his damages without providing any

offsetting benefit to the injured party, the facts of his case potentially place him in a worse position

than if the accident had occurred in New Mexico.  <u>See</u> <u>id.</u> at 8.

Valencia's argument is misplaced for two reasons.  First, the Supreme Court makes no

reference in <u>State Farm Automobile Insurance Co. v. Ovitz</u> to any offsetting benefit that Hawaiian

law may have provided to the insured in exchange for foregoing his right to pursue noneconomic

damages.  Second, and more important, the Supreme Court expressly addressed the policy issues at

play in reaching its decision in <u>State Farm Automobile Insurance Co. v. Ovitz</u>.  The Supreme Court

stated that "[w]e agree that the purpose of [New Mexico's uninsured motorist law] is to 'protect individual members of the public against the hazard of culpable uninsured motorists,'" 117 N.M. at 550, 873 P.2d at 982 (quoting Romero v. Dairyland Ins. Co., 111 N.M. 154, 156, 803 P.2d 243, 245 (1990)), but reasoned that "permitting recovery in this case would unduly expand the meaning of this principle," State Farm Auto. Ins. Co. v. Ovitz, 117 N.M. at 550, 873 P.2d at 982. The Supreme Court explained that, "[w]hile it is important to protect the public from 'irresponsible or impecunious drivers,' uninsured motorist coverage is 'not intended to provide coverage in every uncompensated situation.'" Id. (quoting Kurent v. Farmers Ins. of Columbus, Inc., 581 N.E.2d 533, 536 (Ohio 1991)).

Valencia argues that the facts of his case are distinct from those of State Farm Automobile Insurance Co. v. Ovitz because the "at-fault driver" is a New Mexico resident and because the accident occurred not in distant, geographically isolated Hawaii, but approximately four miles from the New Mexico border. Valencia's Memorandum at 8. Valencia contends that, "the parties and occurrences in [State Farm Automobile Insurance Co. v.] Ovitz, unlike the instant case, had a substantial relationship to Hawaii." Valencia's Reply at 3. The Court first notes that, while Valencia asserts that Lucero was the at-fault driver, see id. ¶ 2, at 3, CCIC contests that the issue has already been resolved and contends that there is nothing in the record to establish that fact for the purposes of this motion, see CCIC's Reply at 1-2. The Court also does not believe that Colorado's proximity to New Mexico creates any meaningful distinction between State Farm Automobile Insurance Co. v. Ovitz and Valencia's case. The Supreme Court in State Farm Automobile Insurance Co. v. Ovitz noted that "[m]otorists driving in Hawaii accept and abide by Hawaiian law as it pertains to accidents occurring in Hawaii." 117 N.M. at 550, 873 P.2d at 982. The Court does

-14-

not believe that Colorado's interest to make and enforce its own laws regarding motorists' safety and accident liability is any less significant than Hawaii's, solely because the state may be more accessible to foreign citizens.  To the extent that Valencia and his covered insureds have availed themselves of the privilege of driving on Colorado's roadways, they are subject to Colorado's traffic safety and liability laws.  In sum, Valencia has not established how a New Mexico resident driving in Hawaii has more of a substantial relationship with Hawaii than a New Mexico resident driving in Colorado has with Colorado.

Finally, the Court notes that, although New Mexico courts have acknowledged the policy exception to the general lex loci delicti rule, both the New Mexico courts and the United States Court of Appeals for the Tenth Circuit have acknowledged that New Mexico courts "begin with a strong presumption in favor of application of the place-of-the-wrong rule." Gilmore v. Gilmore (In re Estate of Gilmore), 1997-NMCA-103, ¶ 21, 946 P.2d at 1136.  See Tuato v. Brown, 85 Fed. Appx. at 676 (observing that New Mexico caselaw "confirms the strong presumption that New Mexico courts apply lex loci in tort cases").  The strength of this presumption is reflected in the fact that Valencia has cited only one tort case in which the exception was employed, and that "New Mexico courts have steadfastly applied the lex loci delicti rule in tort cases even when the connection between the lawsuit and New Mexico was largely fortuitous." Terrazas v. Garland & Loman, Inc., 2006-NMCA-111, ¶ 14, 142 P.3d at 378 (citing State Farm Mut. Auto. Ins. Co. v. Ballard, 2002-NMSC-030, ¶ 7, 54 P.3d at 539 (applying New Mexico tort law to a single car accident involving non-residents passing through New Mexico en route from California to Georgia); First Nat'l Bank in Albuquerque v. Benson, 89 N.M. at 481, 553 P.2d at 1288).  In light of the strength of this presumption and Valencia's inability to distinguish adequately the facts of his case

from those in which the Supreme Court of New Mexico has applied the lex loci delicti rule, the

Court finds that New Mexico caselaw counsels for the application of Colorado law to determine the

amount of UM benefits to which Valencia is entitled.

## II. COLORADO LAW DOES NOT CONFLICT WITH NEW MEXICO PUBLIC POLICY SUFFICIENTLY TO OVERRIDE THE GENERAL RULE WHICH WOULD APPLY COLORADO LAW.

Valencia argues that the Court should apply New Mexico law to the tort claims in this case,

because Colorado law conflicts with New Mexico public policy.  See Valencia's Memorandum at

8.  Valencia cites a number of New Mexico cases invalidating various exclusionary provisions in

insurance contracts that limit UM coverage and represents that "New Mexico public policy requires

that New Mexico's presumptive choice-of-law rule not apply in the present case."  Id. at 10.

Because the Court believes that Valencia has not fully accounted for meaningful distinctions

between the cases he cites and the facts of his case, and because the Court does not believe that

applying Colorado law would frustrate the legislative purpose behind New Mexico's uninsured

motorist statute, the Court disagrees.

In Lopez v. Foundation Reserve Insurance Co., 98 N.M. 166, 646 P.2d 1230 (1982), the

Supreme Court of New Mexico held that an insured may aggregate, or "stack," uninsured motorist

coverage when more than one automobile is covered under a single policy.  Id. at 171, 646 P.2d at

1235.  Valencia interprets Lopez v. Foundation Reserve Insurance Co. to stand for the proposition

that "the legislative intent of the uninsured motorist statute is to set forth a minimum amount of

coverage, not a limitation on coverage."  Valencia's Memorandum at 9.  He asserts that the

statutorily mandated UM coverage is designed to protect the insured from the uninsured motorist,

not to protect the insurance company from the insured.  See id. (quoting Sandoval v. Valdez, 91

N.M. at 708, 580 P.2d at 134).

While the Supreme Court in <u>Lopez v. Foundation Reserve Insurance Co.</u> acknowledged that "[t]he intent of the legislation is to assure that no insured motorist will remain uncompensated for injuries caused by an uninsured motorist," it also explained that "[t]he desired result is that an injured insured receive the same compensation when injured by an uninsured motorist as he would receive if the other motorist had carried the minimum amount of liability insurance provided by statute." 98 N.M. at 170, 646 P.2d at 1234.  Moreover, the Court did not allow stacking as an unlimited proposition, but only when the insured could establish that he had paid multiple premiums for UM coverage on multiple vehicles.  <u>See</u> <u>id.</u> at 171, 646 P.2d at 1235 ("The insured has the initial burden of proving that he paid multiple premiums for uninsured motorist coverage.").  The Supreme Court held that the UM statute did not require separate full uninsured motorist coverage for each vehicle insured under a single policy, because the payment of multiple premiums -- regardless whether those premiums were paid in the context of one or multiple policies -- entitled the insured to multiple recoveries.  <u>See</u> <u>id.</u> at 170-71, 646 P.2d at 1234-35.

Valencia also cites <u>Sandoval v. Valdez</u>, a case in which the New Mexico Court of Appeals struck down a contract provision that limited the insured's right to sue for UM coverage to a period of one year, two years shorter than the state's general statute of limitations applicable to personal injury actions.  <u>See</u> 91 N.M. at 708-09, 580 P.2d at 134-35.  The insured in <u>Sandoval v. Valdez</u> had asserted that both he and the uninsured driver were residents of Colorado at the time of the automobile accident that was the subject of the litigation, but that, at the time of the lawsuit, both were residents of New Mexico.  <u>See</u> <u>id.</u> at 706, 580 P.2d at 132.  Valencia summarizes that, "[d]espite the fact that the provision would be valid under Colorado law, where the contract was

executed and where the collision occurred, the Court nonetheless refused to apply the presumptive choice-of-law rules because of countervailing public policy of New Mexico." Valencia's Memorandum at 9.

Valencia's reliance on Sandoval v. Valdez is misplaced for several reasons. First, the Court of Appeals in Sandoval v. Valdez applied principles of contract law, not tort law, in deciding whether the right-to-sue limitation contained in the insurance contract violated New Mexico public policy. Indeed, while Valencia asserts that "the collision occurred" in Colorado, see Valencia's Memorandum at 9, neither the majority nor the specially concurring opinion in Sandoval v. Valdez describe the accident as a "collision," indicate that the accident occurred in Colorado, or make any comment regarding the merits of the tort action between the insured and the uninsured driver. The possible scope of the insured's recovery was not before the Court of Appeals, because, if the right-to-sue provision was not invalid, the provision would preclude any recovery.

Valencia also states that the right-to-sue provision at issue in Sandoval v. Valdez "would be valid under Colorado law," Valencia's Memorandum at 9, and appears to suggest that the Court of Appeals' ruling was based, at least partially, on some conflict between Colorado and New Mexico law. The Court of Appeals, however, expressly rejected this contention. Sandoval v. Valdez, 91 N.M. at 707, 580 P.2d at 133 (describing insurer's contention that the challenged provision is valid under Colorado law as "without merit"). The Court of Appeals explained that "[w]e could not find . . . any case law in which Colorado has considered whether such a 'time to sue' provision violates the legislative declaration of policy embodied by Colorado's uninsured motorist statute." Id.

Valencia compares his case to Stinbrink v. Farmers Insurance Co. of Arizona and Boradiansky v. State Farm Mutual Automobile Insurance Co., 2007-NMSC-015, 156 P.3d 25. See

Valencia's Memorandum at 10-11; Valencia's Reply at 8-9.  In <u>Stinbrink v. Farmers Insurance Co. of Arizona</u>, the Supreme Court invalidated an insurance provision that excluded the recovery of punitive damages from an uninsured tortfeasor.  The Supreme Court noted that it had previously held that UM coverage includes punitive damages and therefore determined that a provision excluding such damages was an "effort to exclude coverage required by statute by contracting it away."  111 N.M. at 180, 803 P.2d at 665.  The Supreme Court in <u>Stinbrink v. Farmers Insurance Co. of Arizona</u> explained that, because the contractual provision conflicted with statutory law, it was void and unenforceable.  <u>See</u> <u>id.</u> at 181, 803 P.2d at 666.

In <u>Boradiansky v. State Farm Mutual Automobile Insurance Co.</u>, the Supreme Court invalidated an insurance provision that excluded UM coverage for accidents involving government owned vehicles and held that an insured who had suffered an injury in an accident with a state vehicle was legally entitled to recover UM damages beyond the limits established in the New Mexico Tort Claims Act.  <u>See</u> 2007-NMSC-015, ¶ 21, 156 P.3d at 30.  Valencia asserts that, similar to the Tort Claims Act, Colorado's wrongful death statute would apply to potentially cap recovery against a tortfeasor and concludes that, the cap may render the tortfeasor "'underinsured' for purposes of recovering [UM] benfits."  Valencia's Reply at 8-9.

Valencia's comparison of his case to <u>Stinbrink v. Farmers Insurance Co. of Arizona</u> and <u>Boradiansky v. State Farm Mutual Automobile Insurance Co.</u> overlooks several meaningful distinctions.  First, the Supreme Court in both those cases applied contract law, not tort law, to reach its decisions.  <u>See</u> <u>Tuato v. Brown</u>, 85 Fed. Appx. at 675 (describing the choice-of-law analysis in an case involving the validity of an insurance contract provision as "inapposite to a determination of choice-of-law questions in tort").  Second, unlike the insurance companies in <u>Stinbrink v. Farmers</u>

-19-

Insurance Co. of Arizona or Boradiansky v. State Farm Mutual Automobile Insurance Co., CCIC is not attempting to limit its liability through contract; rather, it asserts that substantive tort law limits its liability.  Likewise, the Supreme Court in Stinbrink v. Farmers Insurance Co. of Arizona did not address the possible scope of any specific recovery the insured might receive.  Finally, the Supreme Court was not faced with a conflict-of-laws problem in either Stinbrink v. Farmers Insurance Co. of Arizona or Boradiansky v. State Farm Mutual Automobile Insurance Co.

Valencia also overlooks distinctions between Colorado's wrongful death statute and the New Mexico Tort Claims Act.  The Supreme Court in Boradiansky v. State Farm Mutual Automobile Insurance Co. held that an injured insured was legally entitled to benefits above the Tort Claims Act, not because potential caps on recovery were illegal per se or because an insured was entitled to an unlimited amount of damages, but because the cap only applied to recovery against the State.  See 2007-NMSC-015, ¶¶ 20-21, 156 P.3d at 30.  The Colorado wrongful death statute is not limited to one defendant, but rather is universal in its application.  Nor can the Colorado wrongful death statute be considered a hard cap on damages similar to the Tort Claims Act; similar to Hawaii's no-fault liability provision at issue in State Farm Automobile Insurance Co. v. Ovitz, the statute caps only recovery on one category of damages.  The Court finds it significant that the Supreme Court in Boradiansky v. State Farm Mutual Automobile Insurance Co. expressly acknowledged the holding in State Farm Automobile Insurance Co. v. Ovitz, a case that dealt with a provision that completely eliminated -- rather than just limited -- noneconomic damages, and did not recognize any inconsistency between the two holdings.  See Boradiansky v. State Farm Mut. Auto. Ins. Co., 2007-NMSC-015, ¶ 12, 156 P.3d at 28.

The problem with Valencia's arguments is that, while the New Mexico courts have construed

New Mexico's uninsured motorist statute liberally, his analysis disregards one condition that the courts have consistently imposed on the recovery of UM benefits -- that the insured be "legally entitled" to recover.  Mandatory Financial Responsibility Act, N.M. Stat. Ann. § 66-5-301(A) ("MFRA").  See State Farm Auto. Ins. Co. v. Ovitz, 117 N.M. at 550, 873 P.2d at 982 (holding that insurer was not obligated to pay benefits because the insured was not legally entitled to collect noneconomic damages); Stinbrink v. Farmers Ins. Co. of Ariz., 111 N.M. at 180, 803 P.2d at 665 ("The only condition to protection under the provision is that 'the injured person must be legally entitled to recover damages from the uninsured motorist.'")(quoting Stewart v. State Farm Mut. Auto. Ins. Co., 104 N.M. 744, 746, 726 P.2d 1374, 1376 (1986)); State Farm Mut. Auto. Ins. Co. v. Luebbers, 2005-NMCA-112, ¶ 14, 119 P.3d 169, 174 ("The only limitations on protection are those specifically set out in the statute itself: that the insured be legally entitled to recover damages and that the negligent driver be uninsured.")(quoting Schmick v. State Farm Mut. Auto. Ins. Co., 103 N.M. 216, 219, 704 P.2d 1092, 1095 (1985)); Sandoval v. Valdez, 91 N.M. at 708, 580 P.2d at 134.  Valencia is correct that the New Mexico courts have construed the MFRA liberally and in favor of insureds.  He is also correct that the MFRA guarantees an insured a minimum recovery. Nothing in the language of the caselaw he cites, however, indicates that he is entitled to recover unlimited damages or even damages equal to the full limits under his policy.  To the contrary, the Supreme Court has acknowledged that "uninsured motorist coverage is 'not intended to provide coverage in every uncompensated situation.'"  State Farm Auto. Ins. Co. v. Ovitz, 117 N.M. at 550, 873 P.2d at 982 (quoting Kurent v. Farmers Ins. of Columbus, Inc., 581 N.E.2d at 536).

The Court notes that each of the cases that Valencia cites for support involve an insurer's attempt to limit its liability through private contract.  In each of the cases in which the New Mexico

courts have struck down a provision limiting recovery of UM benefits, they have done so because the specific contractual provision at issue limited the recovery of benefits to which the insured was legally entitled.  Moreover, Valencia has not cited any case, including <u>Torres v. New Mexico</u>, in which the Court varied from the presumptively applicable law because another jurisdiction's substantive law violated New Mexico policy.  Indeed, in the only case that the parties have cited in which another jurisdiction's law led to a recovery that would have differed under New Mexico law, <u>State Farm Automobile Insurance Co. v. Ovitz</u>, the Supreme Court applied the foreign jurisdiction's law.

The Tenth Circuit has reached a similar result in a case in which the application of New Mexico law could have altered the nature of the plaintiffs' recovery.  In <u>Tuato v. Brown</u>, the plaintiffs sued on behalf of three California residents who were killed when the pickup truck in which they were traveling collided with a semi-truck in Utah.  <u>See</u> 85 Fed. Appx. at 675.  The driver of the semi-truck was a New Mexico resident.  <u>See id.</u> at 676.  Because the plaintiffs in <u>Tuato v. Brown</u> conceded the contributory negligence of the pickup driver, they argued that New Mexico law, which incorporated comparative rather than contributory negligence, should apply.  <u>See id.</u> at 675-76.  In rejecting the plaintiffs' argument, the Tenth Circuit in <u>Tuato v. Brown</u> observed that the "[p]laintiffs have failed to overcome this strong presumption [of <u>lex loci</u> in tort] because they offer no compelling policy considerations that would persuade a new Mexico court to apply New Mexico law rather than Utah law."  <u>Id.</u>  The Tenth Circuit concluded that "[w]e see no reason why New Mexico has a compelling interest in providing a specific theory of recovery (comparative rather than contributory negligence) to California plaintiffs who suffered injury in Utah."  <u>Id.</u>

While the Court understands that Valencia's connections to New Mexico are more

significant than those of the plaintiffs in <u>Tuato v. Brown</u>, it believes that the Tenth Circuit's decision remains important to the extent that it stands for the proposition that the application of a foreign jurisdiction's substantive law is not invalid solely because it has the potential to limit a plaintiff's final recovery.  Nor does the Court believe that Colorado's limits on noneconomic damages in a wrongful death action necessarily violate the policy behind the MFRA.  Valencia does not, and cannot, argue that the cap on noneconomic damages that Colorado imposes restricts him from receiving the statutory minimum recovery.  <u>See</u> N.M. Stat. 66-5-215(A)(1) (establishing a $25,000.00 minimum recovery in a wrongful death action).  Valencia has not referenced, and the Court has not discovered in its independent research, any other applicable limitation on any other category of damages under Colorado law.  Colorado law provides for the recovery of up to $250,000.00 in noneconomic damages, and up to $500,000.00 in cases involving clear-and-convincing evidence.  Absent more explicit direction from the New Mexico courts, the Court does not believe that a cap ten to twenty times greater than the statutory minimum recovery -- on only one category of damages -- offends New Mexico public policy to the extent that it overcomes the strong presumption that Colorado law applies.

III.    **THE COURT WILL NOT RELY ON THE "MOST SIGNIFICANT RELATIONSHIP"**
        **TEST TO DETERMINE WHAT LAW TO APPLY.**

Valencia contends that, "[i]n certain circumstances, the fact that another State may have a more significant interest in having its law apply may justify application of that State's law." Valencia's Memorandum at 11.  Valencia states that, considering the interests of the parties and the public policy issues implicit in this case, the Supreme Court of New Mexico would likely apply the "most significant relationship" test articulated in section 145 of the Restatement (Second) of Conflict of Laws.  Valencia's Memorandum at 13.  <u>See</u> Restatement (Second) of Conflict of Laws § 145.

Section 145 provides that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties."  Restatement (Second) of Conflict of Laws § 145(1). Section 145 articulates four factors to consider when applying the "most significant relationship" test: "[i] the place where the injury occurred; [ii] the place where the conduct causing the injury occurred; [iii] the domicile, residence, nationality, place of incorporation and place of business of the parties; and [iv] the place where the relationship, if any, between the parties is centered."  Id. § 145(2).

In support of his assertion that the Supreme Court of New Mexico would apply the "most significant relationship" test, Valencia cites State Farm Mutual Insurance Co. v. Conyers, 109 N.M. 243, 784 P.2d 986 (1989), a case in which the Supreme Court considered a different section of the Restatement (Second) of Conflicts of Law in a contract choice-of-law case.  See State Farm Mut. Ins. Co. v. Conyers, 109 N.M. at 247, 784 P.2d at 990 (citing Restatement (Second) of Conflict of Laws § 193).  Valencia has not referenced any New Mexico tort case that has expressly relied upon section 145 in deciding what jurisdiction's law to apply.  Valencia has also not addressed New Mexico cases subsequent to State Farm Mutual Insurance Co. v. Conyers that have expressly disavowed section 145 as the law in New Mexico tort cases.

In Gilmore v. Gilmore (In re Estate of Gilmore), the Honorable Harris L Hartz, then Chief Judge of the New Mexico Court of Appeals and now United States Circuit Judge for the Tenth Circuit, outlined the factors articulated in section 145, but cautioned that the Supreme Court of New Mexico "has not embraced the Restatement Second with respect to choice-of-law issues in either tort or contract."  1997-NMCA-103, ¶ 20, 946 P.2d at 1136.  Citing State Farm Mutual Insurance

-24-

Co. v. Conyers, Judge Hartz elaborated that "[t]he furthest [the Supreme Court of New Mexico] has gone is to give some lip service to [the] Restatement Second in a contract choice-of-law case, in which it found that the result it reached would have been the same under the Restatement Second approach." Gilmore v. Gilmore (In re Estate of Gilmore), 1997-NMCA-103, ¶ 20, 946 P.2d at 1136 (citing State Farm Mut. Ins. Co. v. Conyers, 109 N.M. at 246-48, 784 P.2d at 989-91).

More recent New Mexico jurisprudence is consistent with Judge Hartz' analysis in Gilmore v. Gilmore (In re Estate of Gilmore). In Terrazas v. Garland & Loman, Inc., the New Mexico Court of Appeals considered choice-of-law issues in the context of a case involving a personal injury suit brought by two construction workers who were Texas residents but were injured on a construction project in Las Cruces, New Mexico. See 2006-NMCA-111, ¶¶ 2-3, 142 P.3d at 375. The workers were employees of a Texas corporation that had obtained workers' compensation insurance from a Texas insurance company. See id. In applying New Mexico law to the workers' personal injury lawsuit, the New Mexico Court of Appeals in Terrazas v. Garland & Loman, Inc. "recognize[d] that this case has significant connections with Texas," but explained that "[o]ur Supreme Court has not adopted the 'most significant relationship' approach of the Restatement (Second) of Conflict of Laws." Terrazas v. Garland & Loman, Inc., 2006-NMCA-111, ¶ 14, 142 P.3d at 378. In denying the applicability of section 145, the New Mexico Court of Appeals stated that "New Mexico's traditional lex loci delicti approach does not require -- indeed, does not permit -- a case-by-case policy analysis." Id.

Valencia's argument regarding the application of the "most significant relationship" test is not novel. In First National Bank in Albuquerque v. Benson, a case the New Mexico Court of Appeals decided in 1976, the Honorable B.C. Hernandez, New Mexico Court of Appeals Judge,

authored a dissent in which he acknowledged that the place-of-harm rule is valuable for "predictability of result," but opined "that the 'significant relationship' doctrine provides the most practical and just approach for reconciling the competing interests of the various states in tort cases with bilateral or multi-state relationships."  First Nat'l Bank in Albuquerque v. Benson, 89 N.M. at 485, 553 P.2d at 1292 (Hernandez, J., dissenting).  Nevertheless, in the only New Mexico tort cases that the Court has found discussing section 145 since First National Bank in Albuquerque v. Benson, Gilmore v. Gilmore (In re Estate of Gilmore) and Terrazas v. Garland & Loman, Inc., the New Mexico Court of Appeals has expressed reluctance to rely on the  section.  This reluctance, combined with the fact that thirty-one years have passed since Judge Hernandez issued his dissent in First National Bank in Albuquerque v. Benson without any significant change in the law adopting his position, convince the Court that the "most significant relationship" test is not the appropriate basis to resolve choice-of-law questions in New Mexico tort actions.

Moreover, despite Valencia's contention that, under the "most significant relationship" test, the parties have the most significant relationship with New Mexico, as opposed to Colorado, the Court is not convinced.  In applying the "most significant relationship" test, section 145 instructs the Court to consider: "[i] the place where the injury occurred; [ii] the place where the conduct causing the injury occurred; [iii] the domicile, residence, nationality, place of incorporation and place of business of the parties, and [iv] the place where the relationship, if any, between the parties is centered."  Id. § 145(2).  The Court notes that: (i) the injury to Anne-Marie occurred in Colorado; (ii) the conduct that caused the injury occurred on a Colorado roadway; and (iii) CCIC is a Colorado corporation with its principal place of business in Colorado.  While the Court acknowledges that Valencia is a New Mexico resident and that the contract between Valencia and CCIC was executed

-26-

in New Mexico, the Court does not believe that these factors are so substantial as to overcome those factors counseling for the application of Colorado law or the New Mexico courts' strong presumption that the law of the place where the harm occurred is applicable in tort cases.

## IV.    THE COURT CANNOT SAY THAT NEW MEXICO'S INTEREST IN APPLYING ITS LAW IS GREATER THAN THAT OF COLORADO'S.

Valencia suggests that New Mexico has a more significant interest in having its laws apply to this litigation than Colorado. See Valencia's Memorandum at 14-15. Valencia's argument seems to be premised on two factors. First, that Colorado's interest in the litigation is limited to the fact that the accident that is the subject of this litigation occurred in Colorado, but only four miles from the New Mexico border. See id. at 14. Second, that the damages arising from Anne-Marie's death have all occurred, and are continuing to occur, in New Mexico. See id. at 14-15.

Valencia asserts that "Anne-Marie's death 4 miles across the border of New Mexico is the only contact between the parties and the State of Colorado." Id. at 15. He argues that neither Valencia, CCIC, nor Lucero has any significant contacts with Colorado. See id. The Court disagrees. CCIC is a Colorado corporation with its principal place of business in Colorado. The insurance policy that Valencia purchased from CCIC lists the company's address in Englewood, Colorado. The Court believes that Colorado has an interest in ensuring that its businesses' obligations are adjudicated under the most appropriate and applicable law.

The Court also does not believe that the fact the accident occurred just four miles from the New Mexico border is meaningful. Colorado's interest in enforcing its traffic laws and ensuring the safety of its roadways is no less significant in the roadways close to its border than it is in more interior portions of the state. Nor are Valencia and his covered insureds exempt from obeying those laws merely because they happen to reside in Farmington, close to the New Mexico/Colorado

-27-

border.  To the contrary, because the policy was issued to an address in Farmington, very close to

the Four Corners region, it is not unreasonable to think that the parties to the contract might have

expected that the vehicles might occasionally be used in another state.  For the purposes of this cause

of action, Valencia availed himself of the privilege of accessing Colorado's roadways for the

purpose of engaging in activity at a destination in Colorado.  He was not exempt from Colorado's

speed limits or traffic laws, and he is not exempt from Colorado's laws regarding the amount of

damages that flow from torts committed on its highways.  Cf. State Farm Auto. Ins. Co. v. Ovitz,

117 N.M. at 550, 873 P.2d at 982 ("Motorists driving in Hawaii accept and abide by Hawaiian law

as it pertains to accidents occurring in Hawaii.").

Valencia also argues that New Mexico has a greater interest in having its laws apply than

Colorado because the damages arising from Anne-Marie's death have all occurred, and are

continuing to occur, in New Mexico.  Valencia cites Gilmore v. Gilmore (In re Estate of Gilmore)

for the proposition that "[t]he states that have an interest in where the proceeds go are the states

where the potential beneficiaries are domiciled."  Valencia's Memorandum at 14 (quoting Gilmore

v. Gilmore (In re Estate of Gilmore), 1997-NMCA-103, ¶ 27, 946 P.2d at 1138.  Valencia maintains

that, in this case, the beneficiaries of Anne-Marie's wrongful death are all domiciled in New

Mexico.  See Valencia's Memorandum at 15.

Valencia admits, however, that "were liability an issue in the present case, the place-of-the-

wrong rule may be more appropriate and sound," but asserts that the rule is less significant in his

case, because "[t]his case is about damages: who suffered them and how much."  Id.  Despite

Valencia's attestations, the Court is uncertain that, at this point in the proceedings, the case can be

simplified in the manner he proposes.

The Court notes that Valencia has styled his counter-motion as a motion for partial summary judgment. To the extent that he is asserting that Lucero is liable for the accident that is the subject of this litigation -- and thus liability is not at issue -- there appears to be a dispute of fact on this point. See CCIC's Reply at 1-2. Valencia argues that CCIC has admitted paying $142,105.26 in benefits to Valencia and contends that this payment establishes Lucero's liability, because these sums "were only recoverable from an at-fault owner or driver." Valencia's Reply at 2 (citing CCIC's Memorandum at 2). The Court has carefully reviewed CCIC's briefing and does not agree that it has conceded liability under the Policy it issued to Valencia. In its Memorandum, CCIC states that "[t]he Valencia's had three liability insurance policies in the amount of $50,000 each. . . . [Valencia] received $50,000 in benefits from Mr. Lucero's liability carrier and $142,105.26 from his own." CCIC's Memorandum at 2. Neither CCIC nor Valencia has expressly identified the policies from which these proceeds were paid, the insurance companies that paid these proceeds, or the bases for these payments. Neither party has presented any evidence indicating an assertion of liability based on these payments, or made any reference to related subrogation or litigation efforts that may be on-going in association with these payments. Although Valencia has submitted a copy of the Colorado Police Report indicating that Lucero was driving at the time of the accident, and which includes the on-scene officer's opinion that Lucero may have been driving recklessly, Valencia has not submitted any evidence -- such as a judgment, a settlement agreement, or an affidavit -- establishing Lucero's legal liability for the accident. To the extent that Valencia asserts all of Anne-Marie's beneficiaries are domiciled in New Mexico, he has not presented adequate evidence establishing that fact for summary judgment. Valencia has submitted an affidavit stating that he, his wife, and Anne-Marie were domiciled in New Mexico at all times relevant to the

-29-

present action.  See Valencia's Reply, Exhibit 2, Affidavit of Gene Valencia ¶¶ 1-2, at 1.  In his

affidavit, Valencia also makes the blanket statement that "[a]t all times relevant to the present action,

the beneficiaries of Anne-Maries's wrongful death proceeds have domiciled, and continue to be

domiciled, in the State of New Mexico."  Id. ¶ 3, at 1.  Valencia has not, however, submitted

affidavits or presented other evidence indicating under what statute, will, or other legal authority he

has determined whom the beneficiaries are.  He has not specifically identified the beneficiaries, has

not described their relationship to Anne-Marie, nor indicated where they live.

Moreover, even if all of the beneficiaries are New Mexico residents, this factor alone would

not necessarily be sufficient to overcome the presumption in favor of applying Colorado law.  In

Gilmore v. Gilmore (In re Estate of Gilmore), the New Mexico Court of Appeals applied Texas law

to distribute wrongful death proceeds related to a motorcycle accident that occurred in Texas,

despite the fact that neither the decedent nor any of the beneficiaries were Texas residents.  See

1997-NMCA-103, ¶ 29, 946 P.2d at 1138.  Moreover, although the New Mexico Court of Appeals

acknowledged that a state has an interest in the distribution of proceeds to its citizens, it declined

to assume that the state's interest was "result-oriented."  Id. ¶ 29, 946 P.2d at 1139.  The New

Mexico Court of Appeals in Gilmore v. Gilmore (In re Estate of Gilmore) summarized that "[w]e

presume that a state is not interested in the most favorable result for its residents, but only that each

state wants the 'just' result for its residents."  Id.

In sum, the Court cannot say that New Mexico's interest in having its laws apply to the tort

portion of this case is greater than that of Colorado's.  Colorado has significant interest in enforcing

its traffic laws and ensuring roadway safety, and in ensuring that the liabilities of its citizens are

adjudicated according to the appropriate laws.  While New Mexico may have an interest in the

distribution of damages to its citizens, Valencia has not presented evidence sufficient to establish that New Mexico's interest in this case is sufficiently significant to overcome the presumption that Colorado law applies.

## V.   IT IS NOT CERTAIN THAT NEW MEXICO LAW WOULD APPLY UNDER COLORADO CHOICE-OF-LAW RULES.

Valencia asserts that, had this case been filed in the Colorado courts, those courts would apply New Mexico law to this dispute. See Valencia's Memorandum at 16. Valencia contends that this is an additional factor counseling for the application of New Mexico law. See id. at 17. Valencia's conclusion, however, is premised on his understanding that Colorado courts apply the "most significant relationship" approach for both tort and contract actions, and on his conclusion that "Colorado has no significant relationship to this action." Id. at 16.

The Court first notes that, regardless of the approach that a Colorado court would apply, when making a choice-of-law selection, the Court must adhere to New Mexico law. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. at 496. The New Mexico courts have repeatedly denied the applicability of the "most significant relationship" test to choice-of-law questions in New Mexico. Moreover, the Court has already explained that Valencia's assertions about the extent of Colorado's interest in this case do not fully account for Colorado's real interests in protecting its citizens' interests in this litigation and ensuring its public's safety on its roadways. The Court cannot say definitely that a Colorado court, applying the "most significant relationship" test, would apply New Mexico law to this dispute. The Court does not agree with Valencia that this factor counsels for the application of New Mexico law.

In sum, the Court believes that, based on the record the parties have presented, Valencia has not established a genuine issue of material fact regarding the application of Colorado law. The

Court will enter partial summary judgment on CCIC's behalf and will apply Colorado law to determine the amount of benefits due Valencia in this case.

      **IT IS ORDERED** that the Defendant Colorado Casualty Insurance Company's Motion for Partial Summary Judgment that Colorado Law Applies to Determine the Amount of Benefits to Which the Plaintiff is Due is granted.   The Plaintiff's Counter-Motion for Partial Summary Judgment Re: The Application of New Mexico Law is denied.   The Court will apply Colorado law to determine the amount of benefits due Valencia in this case.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Michael R. Huffaker
Law Offices of Michael R. Huffaker, P.C.
Farmington, New Mexico

-- and --

William Babich
Law Firm of William Babich, LLC
Denver, Colorado

      *Attorneys for the Plaintiff*

Seth L. Sparks
Wade L. Jackson
Rodey, Dickason, Sloan, Akin
  & Robb, P.A.
Albuquerque, New Mexico

      *Attorneys for the Defendan*