## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

GENE VALENCIA,

      Plaintiff,

vs.                                    No. CIV 06-1259 JB/RHS

COLORADO CASUALTY INSURANCE COMPANY,

      Defendant.

## MEMORANDUM ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Compel Discovery, filed August 27, 2007 ("Motion to Compel")(Doc. 53).  The Court held a hearing on the motion on October 9, 2007.  The primary issue is whether the Court should permit Defendant Colorado Casualty Insurance Company to shield certain documents from production by asserting protection under the attorney-client privilege.  Because the Court believes that some of the documents that Colorado Casualty contends are privileged are not protected, because the content and context of some of the claimed privileged documents are not clear as they are currently presented by Colorado Casualty, and because the Court believes some of the responses provided by Colorado Casualty are appropriate at the present time, the Court will grant in part and deny in part Plaintiff's Motion to Compel Discovery.

## FACTUAL BACKGROUND

The Court set out the factual background for this case in its Memorandum Opinion and Order filed August 8, 2007.  See Memorandum Opinion and Order at 1-3, filed Aug. 8, 2007 (Doc. 50)("Memorandum Opinion"). In the Court's August 8, 2007 Memorandum Opinion and Order, the Court noted that Valencia adopted the Undisputed Facts and Exhibits set forth in Colorado Casualty

Insurance Company's Memorandum, and incorporated the same into his pleadings.   See Memorandum Opinion at 2; Valencia's Brief in Support of Plaintiff's Counter-Motion for Partial Summary Judgment Re: The Application of New Mexico Law at 2, filed July 2, 2007 (Doc. 37)("Valencia's Memorandum"); Colorado Casualty's Brief in Support of its Motion for Partial Summary Judgment that Colorado Law Applies to Determine the Amount of Benefits to Which the Plaintiff is Due ¶ 1, at 2, filed May 11, 2007 (Doc. 21)("CCIC's Memorandum").

On June 23, 2004, Colorado Casualty issued Valencia a commercial auto insurance policy to cover eight trucks that Valencia used in his insulation business. See CCIC's Memorandum ¶ 1, at 2; Policy at 5. The effective policy period was from May 29, 2004 to May 29, 2005. See Policy at 1.

The policy that Colorado Casualty issued to Valencia included uninsured motorist ("UM") coverage in accordance with New Mexico law. See CCIC's Memorandum ¶ 2, at 3; Id., Exhibit B, New Mexico -- Uninsured Motorists Coverage Endorsement ("UM Endorsement").  The UM coverage provides that Colorado Casualty will "pay all sums the 'insured' is legally entitled to recover as damages from the owner or driver of an 'uninsured motor vehicle.'" UM Endorsement at 1. The policy covered Valencia's family members. See CCIC's Memorandum ¶ 5, at 3; Policy at 1; UM Endorsement at 2. The policy contained an aggregate amount of $800,000.00 in UM coverage. See Valencia's Memorandum ¶ 1, at 3; Defendant Colorado Casualty Insurance Company's Reply Brief in Support of its Motion for Partial Summary Judgment that Colorado Law Applies to Determine the Amount of Benefits to Which the Plaintiff is Due and Response to the Plaintiff's Counter-Motion for Partial Summary Judgment Re: The Application of New Mexico Law at 1, filed July 20, 2007 (Doc. 40)("CCIC's Reply"); Policy at 3. On December 30, 2004, Valencia's

daughter, Anne-Marie Valencia, was killed in an automobile accident that occurred in Colorado -- approximately four miles from the Colorado/New Mexico border. <u>See</u> CCIC's Memorandum at 1; <u>id.</u> ¶ 9, at 3. Anne-Marie was one of four passengers traveling in a pickup truck that Gilbert Lucero was driving. <u>See</u> CCIC's Memorandum, Exhibit C, State of Colorado Traffic Accident Report ("Police Report").

## PROCEDURAL HISTORY

This case has already generated more discovery disputes than many other civil cases combined. Part of the problem is that Colorado Casualty originally denied that there was an Insurance Claim File in this case, but then found one. Valencia now distrusts what Colorado Casualty says, which puts additional pressure on the Court to review in camera many of Colorado Casualty's assertions of privilege and work-product protection.

### 1.     **The Complaint.**

On December 28, 2006, Valencia filed a Complaint for damages against Colorado Casualty in association with the December 30, 2004 accident. <u>See</u> Complaint and Jury Demand, filed December 28, 2006 (Doc. 1)("Complaint"). Valencia's Complaint asserts an uninsured motorist claim based on breach of contract, <u>see</u> <u>id.</u> ¶¶ 24-42, at 4-6, and a claim for bad faith insurance practices, <u>see</u> <u>id.</u> ¶¶ 43-50, at 6-8.

### 2.     ***Background of Requests and Responses.***

On July 3, 2007, Valencia submitted the Plaintiff's First Set of Interrogatories, Requests for Production, and Requests of Admissions to Colorado Casualty. <u>See</u> Motion to Compel at 1; Certificate of Service by Eugene Valencia of Plaintiff's First Set of Interrogatories, Requests for Production and Requests for Admissions, filed July 3, 2007 (Doc. 39)("Certificate of Service by

Valencia").  On August 2, 2007, Colorado served its responses, which Valencia contended did not comply with the Federal Rules of Civil Procedure.  See  Motion to Compel at 1; Certificate of Service by Colorado Casualty Insurance Company Responses to Plaintiff's First Set of Interrogatories, Requests for Production, and Requests for Admission, filed Aug. 2, 2007 (Doc. 44). Valencia outlined the alleged deficiencies and infirmities of the responses to Colorado in a letter dated August 17, 2007.  See Letter from William Babich to Seth Sparks and Wade Jackson (dated August 17, 2007).  Valencia also discussed Colorado Casualty's failure to produce the Insurance Claim File and other deficiencies by telephone with Colorado Casualty's counsel. See Motion to Compel at 1.

Colorado Casualty responded with supplemental responses, served on August 24, 2007. See Certificate of Service by Colorado Casualty Insurance Company Supplemental Responses to Plaintiff's First Set of Interrogatories, Requests for Production, and Requests for Admission, filed Aug. 24, 2007 (Doc. 52).  Valencia contends that these supplemental responses failed to appropriately amend or supplement numerous deficient responses. See Motion to Compel at 1-2. Accordingly, Valencia seeks to compel with regard to several aspects of his written discovery.  See id. at 2.

Valencia moves the Court, pursuant to D.N.M.LR-Civ. 37.1, to compel discovery from Colorado Casualty.  See Motion to Compel at 1.  Valencia provides the certification, pursuant to rule 37(a)(2)(B) of the Federal Rules of Civil Procedure, that he has, in good faith, attempted to confer with the party failing to make discovery in an effort to secure information or material with the Court's action.  See id.

-4-

3.      **Requests and Responses**.

      a.      **Request For Production ("RFP") No. 1.**

Valencia represents that, before serving RFP No. 1, he made repeated requests for disclosure of the Insurance Claim File relating to this matter.  See Letter from William Babich to Seth Sparks and Wade Jackson (dated May 15, 2007); Letter from William Babich to Seth Sparks and Wade Jackson (dated June 19, 2007).

> PLAINTIFF'S REQUEST FOR PRODUCTION NO 1**:** Produce a complete copy of your entire underinsured motorist (UIM) claim file (hard copy and electronically stored (See F.R.C.P. 34)) generated from the notice of claim until suit was filed, including but not limited to:
>
>     a)     adjustor notes, communications, and writings,
>
>     b)     supervisor and manager claim notes, communications, and writings,
>
>     c)     adjustor diaries,
>
>     d)     payment ledgers,
>
>     e)     inter-office and intra-office e-mails and all other electronic records,
>
>     f)     telephone conversation records,
>
>     g)     memos,
>
>     h)     recorded statements,
>
>     i)     diagrams, photos, or other graphical or pictoral representations,
>
>     j)     agent notes, communications, and writings,
>
>     k)     advice of counsel and opinion letters pre-suit, and
>
>     l)     evaluation of claim analysis.
>
> DEFENDANT'S RESPONSE**:** The Defendant objects to this Request for Production to the extent that it seeks information protected by the attorney-client privilege or the attorney work-product doctrine.  A privilege log is produced herewith.  Subject to

and without waiving said objection, all responsive documents in the Defendant's possession not subject to the aforementioned privileges are produced herewith.

Motion to Compel at 2.

In response to Valencia's formal discovery request, Colorado Casualty produced limited correspondence, vehicle and driver data, an automobile loss notice report, and a privilege log asserting that other documents were allegedly protected by the work-product doctrine and/or attorney-client privilege.  See id. at 2.  Colorado Casualty did not produce or provide to Valencia any tape-recorded statements, claim diaries/logs/notes, or investigations that Colorado Casualty had performed, or other claim file information, and did not reference this material in its log. See id. at 3.

### b.    RFP No. 2.

PLAINTIFF'S REQUEST FOR PRODUCTION NO. 2: Produce any and all writings, recordings, or other tangible things of Defendant, including but not limited to: videos, DVDs, programs, bulletins, and training or instruction documents relating to UM/UIM claims handling and adjusting in effect, utilized, or applicable, from the date of Anne-Marie Valencia's death to present.

DEFENDANTS'S RESPONSE: The Defendant objects to Request for Production No. 2 because it is not reasonably calculated to lead to the discovery of admissible evidence and is unduly burdensome.

Motion to Compel at 12.

### c.    Valencia's Interrogatory No. 3.

PLAINTIFF'S INTERROGATORY NO. 3: Does Defendant contend that C.R.S. § 13-21-203 places a limitation on recovery of economic damages?  If so, state the complete factual and legal basis, if any, for this contention.

DEFENDANT'S RESPONSE: Yes.  The complete factual and legal basis will be provided in the Defendant's motion for partial summary judgment on this issue, to be filed in the near future.

Motion to Compel at 13-14.

### d.      Request For Admission ("RFA") No. 2 and Interrogatory No. 2.

PLAINTIFF'S REQUEST FOR ADMISSION NO. 2: Admit that the UM/UIM provisions of the subject policy cover and are applicable to the subject collision.

DEFENDANT'S RESPONSE: The Defendant admits that the UM/UIM provisions of the Policy the Plaintiff purchased from the Defendant cover "all sums the [Plaintiff] is legally entitled to recover as damages from the owner of an "uninsured motor vehicle," which term is defined by the Policy the Plaintiff purchased from the Defendant, because of "bodily injury" sustained by an "insured" and caused by an "accident," which terms are defined by the Policy the Plaintiff purchased from the Defendants, or "property damage" caused by an "accident," which terms are defined by the Policy the Plaintiff purchased from the Defendant, all as further limited by the Policy the Plaintiff purchased from the Defendant.   The Defendant denies the remainder of Request for Admission No. 2.

PLAINTIFF'S INTERROGATORY NO. 2: Is your response to each request for admission served with these interrogatories an unqualified admission?  If not, for each response that is not an unqualified admission:

a)      state the number of the request;

b)      state the complete factual and legal basis, if any, supporting your responses;

c)      state the names, addresses, and telephone numbers of all persons, if any, who have knowledge of those facts supporting your response;

b)      identify all documents and other tangible things, if any, that support or relate to your response and state the name, address, and telephone number of the person who has each document or thing.

DEFENDANT'S RESPONSE:

a) Request for Admission No. 2;

b) The UM/UIM provisions of Policy the Plaintiff purchased from the Defendant "cover and are applicable to" those sums described in the policy.  They do not apply without limitation as phrased in Request for Admission No. 2.

Motion to Compel at 14-15.

e.      **RFA Nos. 3, 4, and 5.**

PLAINTIFF'S REQUEST FOR ADMISSION NO. 3: Admit that Defendant has paid $149,144.74 of the $800,000 aggregate total UM/UIM coverage existing under the subject policy in UIM benefits for damages related to the death of Anne-Marie Valencia.

DEFENDANT'S ANSWER: The Defendant admits that the Defendant has paid the Plaintiff's $149,144.74 in UM/UIM benefits existing under the Policy the Plaintiff purchased from the Defendant.  The Defendant denies the remainder of Request for Admission No. 3.

PLAINTIFF'S REQUEST FOR ADMISSION NO. 4: Admit that Defendant, through its counsel, represented and conceded to Plaintiff's representatives that Defendant is not legally entitled to offset the tortfeasor's entire liability policy limits.

DEFENDANT'S ANSWER: The Defendant denies Request for Admission No. 4.

PLAINTIFF'S REQUEST FOR ADMISSION NO. 5: Admit that Defendant is not legally entitled to offset the tortfeasor's entire liability policy limits.

DEFENDANT'S ANSWER:  The Defendant denies Request for Admission No. 5.

DEFENDANT'S RESPONSE TO INTERROGATORY NO. 2:

a) Request for Admission No. 4.

b) The Defendant has no knowledge of any such representation or concession.

c) None.

d) None.

Motion to Compel at 15-16.

f.      **RFA No. 8.**

PLAINTIFF'S REQUEST FOR ADMISSION NO. 8: Admit that the underinsured tortfeasor knew or reasonably should have known that ice may exist on bridges in the conditions existing at the time of the subject collision.

DEFENDANT'S INITIAL RESPONSE: The Defendant denies Request for Admission No. 8.

-8-

DEFENDANT'S SUPPLEMENTAL RESPONSE: The Defendant has no knowledge or information regarding what Garrett Lucero knew or reasonably should have known, and therefore denies Request for Admission No. 8.

DEFENDANT'S INITIAL AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

a) Request for Admission No. 8.

b) Assuming that "tortfeasor" refers to Garrett Lucero, Mr. Lucero has not been found liable of any tort and is therefore not a tortfeasor. The Defendant is not aware of any evidence regarding Mr. Lucero's knowledge whether there was ice on the bridge or of "the conditions existing at the time of the subject collision." The Defendant has no knowledge of "the conditions existing at the time of the subject collision," and therefore cannot form an opinion as to what Mr. Lucero "reasonably should have known" about said conditions.

c) None.

d) None.

Motion to Compel at 17-18.

The Court held a hearing on this motion on October 9, 2007. At the hearing, Valencia brought to the Court's attention that Colorado Casualty had failed to provide Valencia with the insurance claim file through its initial disclosures. See Transcript of Hearing (taken Oct. 9, 2007)("Tr.") at 4:6-8 (Babich).[1] Subsequent to initial disclosures, Valencia made several requests to Colorado Casualty for disclosure of documents from the insurance claim file. See id. at 4:6-11 (Babich). On May 14, 2007 five documents were identified in the privilege log and tendered to Valencia. See id. None of the documents produced were part of the insurance claim filed. See id. at 4:19-24 (Babich). On August 2, 2007, Valencia received another privilege log that contained twenty-one additional documents that were claimed as privileged that had not been previously

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

disclosed or claimed as privileged by Colorado Casualty.  See id. at 4:25-5:6 (Babich).  On October 4, 2007, approximately ten months after the case was filed, Colorado Casualty provided Valencia with a third privilege log that contained forty-one additional documents that had not previously been disclosed or claimed as privileged.  See id. at 5:10-16 (Babich).  At the hearing, Colorado Casualty's counsel admitted that they had failed to produce all the proper documents to the Plaintiff and did not realize their error until they had recently reviewed the file to prepare its reply to Valencia's Motion to Compel.  See id. at 14:4-14 (Sparks).  During the hearing, the Court went through Valencia's Motion to Compel and issued oral orders on how Colorado Casualty was to proceed regarding each one of Valencia's concerns.  The Court agreed to conduct an in camera review of various documents listed on the privilege log to assist the parties in determining what was and was not protected under attorney-client privilege and to move this case forward.

## CHOICE OF LAW REGARDING ATTORNEY-CLIENT PRIVILEGE

Pursuant to rule 501 of the Federal Rules of Evidence, state law supplies the rules concerning attorney-client privilege in diversity cases.  See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 699 (10th Cir. 1998).   In a diversity case, state law governs the availability of the attorney-client privilege.  See Fed. R. Evid. 501.

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.  However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501.

The Federal Rules of Evidence do not, however, indicate which state's law the forum state should apply.  See KL Group v. Case, Kay & Lynch, 829 F.2d 909, 918 (9th Cir. 1987). Commentators have suggested several methods for resolving this choice of law issue: "(1) Assume that the state which supplies the rule of decision  is the state which also supplies the privilege law; (2) apply the privilege rules of the state in which the federal court sits; or (3) apply the conflict-of-law doctrine of the state in which the federal court sits." Id. (citing 23 C. Wright & K. Graham, Jr., Federal Practice and Procedure § 5435, at 865-69 (1980); 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 501[02], at 501-22 (1986)).

The first  method applies the state's privilege law "which supplies the rule of decision."  23 Fed. Prac. & Proc. Evid. § 5435, 865-69. This method provides a sensible solution when the privileged communication and the events being litigated involve the same people and take place in the same state. See id.  This method seems questionable, however, when a stranger to the litigation finds that its communication is no longer privileged because the communication is relevant to a law suit concerning events far from its home. See In re Westinghouse Electric Corp., 76 F.R.D. 47, 53–54 (D.C.Pa. 1977)(rejecting this interpretation where a corporation asserted that communications at its home office in one state should be privileged by the law of another state because that state's substantive law would be applicable).  Moreover, this interpretation may require a federal court to resolve difficult questions of privilege under the law of a different jurisdiction without convenient research materials or familiarity with the foreign jurisdiction's privilege laws.

The second method of dealing with the choice-of-law problem is by  applying the privilege rules of the state in which the federal court sits.  This application usually comports with the policy in Erie R. Co. v. Tompkins, 304 U.S. 64 (1938),  of deciding issues in diversity cases as state courts

would. <u>See</u> 23 <u>Fed. Prac. & Proc. Evid.</u> § 5435, 865-69.  Moreover, it often means the judge and the lawyers will be dealing with familiar law and will have convenient research materials for resolving difficult privilege issues. <u>See id.</u> The difficulty with this approach is that it may result in injustice to the privilege claimant if  a privilege is denied in the forum state while the privilege would be honored in the state where the events of the suit took place. <u>See id.</u>

The third method for resolving the choice-of-law problem is by applying the conflict-of-laws doctrine of the state in which the federal court sits. <u>See id.</u>  The Supreme Court of the United States in <u>Klaxon v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487 (1941), held that <u>Erie R. Co. v. Tompkins</u> requires federal courts sitting in diversity to apply the forum's substantive law, including choice-of-law rules.  <u>See Klaxon v. Stentor Electric Mfg. Co.</u>, 313 U.S. at 495-96.  The United States Court of Appeals for the Tenth Circuit has applied this method.  <u>See Pepsi-Cola Bottling Co. of Pittsburgh, Inc. v. PepsiCo, Inc.</u>, 431 F.3d 1241, 1253 (10th Cir. 2005); <u>Stuart v. Colorado Interstate Gas Co.</u>, 271 F.3d 1221, 1225 (10th Cir. 2001). One common problem with the <u>Klaxon v. Stentor Electric Mfg. Co.</u> solution, however, is that, in many states, there is no state authority dealing with choice of law with regard to privileges.  <u>See</u>, <u>e.g.</u>, <u>Samuelson v. Susen</u>, 576 F.2d 546, 550 (3d Cir. 1978). In that situation, therefore, the court is left to either assume that the local courts would follow their own law or that the state would take some other view.

In <u>Pepsi-Cola Bottling Co. of Pittsburgh Inc. v. PepsiCo, Inc.</u>, the Tenth Circuit applied the <u>Klaxon v. Stentor Electric Mfg. Co.</u> rule, stating that "we apply the substantive law of the forum state, including the choice of law rules." 431 F.3d at 1255.  The choice-of-law issue in <u>Pepsi-Cola Bottling Co. of Pittsburgh Inc. v. PepsiCo, Inc.</u> dealt with a contract-based claim.  <u>See id.</u>  Kansas was the forum state.  <u>See id.</u>  The Tenth Circuit looked to Kansas choice-of-law rules, which

honored an effective choice of law clause by the contracting parties.  See id.  The Court held that,

because the contract stated that the relevant matters were to be governed and interpreted by New

York law, New York law applied to Pittsburgh Pepsi's breach of contract and third-party beneficiary

claims. See id. The Tenth Circuit also looked to the Kansas choice-of-law provisions to determine

that Kansas law applied to the claims sounding in tort.  See id.  Kansas choice of law states that the

applicable law for tort claims is the law of the state where the aggrieved party suffered injury.  See

id.  Because the parties agreed the alleged injury occurred in Kansas, Kansas law was applied to the

tort claims. See id.

        New Mexico law gives some guidance on the choice of law regarding privileges.  New

Mexico courts have held that "'the law of the forum governs matters of procedure.'"  Estate of

Gilmore,124 N.M.119, 124, 946 P.2d 1130, 1133 (Ct. App. 1997)(quoting Sierra Life Ins. Co. v.

First Nat'l Life Ins. Co., 85 N.M. 409, 413, 512 P.2d 1245, 1249 (1973)).  See Restatement of

Conflict of Laws § 585 (1934) ("All matters of procedure are governed by the law of the

forum.")("Restatement First").  "The line between substance and procedure, [however], is not

always clear, see Ammerman v. Hubbard Broadcasting, Inc., 89 N.M. 307, 310, 551 P.2d 1354, 1357

(1976), and the judgment where to draw the line in a particular case may depend on the reasons for

drawing the line," Estate of Gilmore,124 N.M. at 122-23, 946 P.2d at 1133-34.  See Sun Oil Co. v.

Wortman, 486 U.S. 717, 726 (1988) (stating that, "[e]xcept at the extremes, the terms 'substance'

and 'procedure' precisely describe very little except a dichotomy, and what they mean in a particular

context is largely determined by the purposes for which the dichotomy is drawn.").  "'A court

usually applies its own local law rules prescribing how litigation shall be conducted even when it

applies the local law rules of another state to resolve other issues in the case.'"  Estate of

-13-

Gilmore, 124 N.M. at 123, 946 P.2d at 1134 (citing Restatement Second §122).   Similarly,

"procedure [is] the judicial process for enforcing rights and duties recognized by substantive law and

for justly administering remedy and redress for disregard or infraction of them." Sibbach v. Wilson

& Co., 312 U.S. 1, 14 (1941).  The New Mexico Court of Appeals has acknowledged that, when

determining whether something is "procedural or substantive," it is important to "keep in mind the

rationale for applying the forum's 'procedural' rules." Estate of Gilmore, 124 N.M. at 123, 946 P.2d

at 1134.  The New Mexico Court of Appeals stated:

> Each state has local law rules prescribing the procedure by which controversies are
> brought into its courts and by which the trial of these controversies is conducted.
> These rules for conducting lawsuits and administering the courts' processes vary
> from state to state. The forum has compelling reasons for applying its own rules to
> decide such issues even if the case has foreign contacts and even if many issues in
> the case will be decided by reference to the local law of another state. The forum is
> more concerned with how its judicial machinery functions and how its court
> processes are administered than is any other state. Also, in matters of judicial
> administration, it would often be disruptive or difficult for the forum to apply the
> local law rules of another state. The difficulties involved in doing so would not be
> repaid by a furtherance of the values that the application of another state's local law
> is designed to promote.

Id., 124 N.M. at 123, 946 P.2d at 1134 (citing Restatement Second § 122 cmt. a.).  Furthermore, the

New Mexico Court of Appeals stated that parties to a lawsuit do not usually think about matters of

judicial administration before entering into legal transactions; thus, they do not usually place

reliance on the applicability of specific state rules.  See Estate of Gilmore, 124 N.M. at 124, 996

P.2d at  1133 (citing Restatement Second § 122 cmt. a.). For these reasons, there is no danger in

applying the forum state's rules in such procedural matters.  See Estate of Gilmore, 124 N.M. at 124,

996 P.2d at 1134.  Furthermore, "'[e]normous burdens are avoided when a court applies its own

rules, rather than the rules of another state, to issues relating to judicial administration, such as the

proper form of action, service of process, pleading, rules of discovery, mode of trial and execution

and costs.'" <u>Estate of Gilmore</u>, 124 N.M. at 123, 996 P.2d at 1134 (quoting Restatement Second § 122 cmt. a).

The Supreme Court of New Mexico has adopted Restatement First of Conflicts of Law. <u>See United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.</u>, 108 N.M. 467, 469, 775 P.2d 233, 235 (1987)(noting "New Mexico adheres to a traditional conflicts of law analysis contained in Restatement (First) of Conflicts of Law (1934)"). "The original Restatement had no provision dealing with privileges; apparently they were to be dealt with under the rule that in matters of evidence the law of the forum governs." 23 <u>Fed. Prac. & Proc. Evid.</u> § 5435, 2. The older view of privileges, under the original Restatement, "was that evidence was procedural and fell, therefore, within the principle that matters of procedure were governed by the law of the forum." <u>Id.</u> The Second Restatement, which the Supreme Court of New Mexico has not expressly adopted, seems to view a privilege as a creation of a substantive right rather than a procedural matter. <u>See id.</u> The Second Restatement § 139 provides:

§ 139. Privileged Communications

(1) Evidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, unless the admission of such evidence would be contrary to the strong public policy of the forum.

(2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.

<u>Restatement</u> <u>Second</u> § 139.

## ATTORNEY-CLIENT PRIVILEGE

"The lawyer-client privilege rests on the need for the advocate and counselor to know all that

relates to the client's reasons for seeking representation if the professional mission is to be carried out." Trammel v. United States, 445 U.S. 40, 51 (1980). The privilege's purpose is "to encourage clients to make full disclosure to their attorneys." Fisher v. United States, 425 U.S. 391, 403 (1976).

Privileges are generally treated as procedural, rather than substantive, under a conflicts-of-law analysis. See Sun Oil Co. v. Wortman, 486 U.S. at 728. It appears that the parties agree that the New Mexico attorney-client privilege and waiver law applies to this case. Under New Mexico law, the attorney-client privilege applies to "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Bd. of Comm'rs of Dona Ana County v. Las Cruces Sun News, 2003-NMCA-102, ¶ 25, 76 P.3d 36, 44; N.M.R.A.11-503B. The party asserting the attorney-client privilege bears the burden of demonstrating that it applies and that it has not been waived. See Pina v. Espinoza, 2001-NMCA-055, ¶ 24, 29 P.3d 1062, 1069 (stating that the party asserting attorney-client privilege must demonstrate the attorney-client privilege's applicability)(citing State v. Gallegos, 92 N.M. 370, 378, 588 P.2d 1045, 1053 (Ct. App.1978)); United Nuclear Corp. v. Gen. Atomic Co., 96 N.M. 155, 217, 629 P.2d 231, 293 (1980)("The bald assertion that production of the requested information would violate a privilege (provided by law) is not enough. The party resisting discovery has the burden to clarify and explain its objections and to provide support therefor. General objections without specific support may result in waiver of the objections.")(internal quotations omitted).

Rule 11-503(b) sets out New Mexico's attorney-client privilege.

General Rule of Privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client,

(1) between the client and the client's lawyer or his lawyer's representative, or

(2) between the client's lawyer and the lawyer's representative, or

(3) by the client or client's lawyer to a lawyer representing another in a matter of common interest, or

(4) between representatives of the client or between the client and a representative of the client, or

(5) between lawyers representing the client.

11-503(b) N.M.R.A. 2000.  N.M.R.A.11-503  also sets out the exceptions to New Mexico's attorney-client privilege: (i) Furtherance of Crime or Fraud; (ii) Claimants Through Same Deceased Client; (iii) Breach of Duty by Lawyer or Client; (iv) Document Attested by Lawyer; and (v) Joint Clients. See 11-503(D) N.M.R.A. 2000.  In addition to the specific exceptions to the attorney-client privilege set out in 11-503(D), New Mexico Rule 11-511 provides guidelines for waiver of privilege by voluntary disclosure:

> A person upon whom these rules confer a privilege against disclosure of the confidential matter or communication waives the privilege if the person or person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This rule does not apply if the disclosure is itself a privileged communication.

11-511 N.M.R.A. 2000.

The New Mexico Court of Appeals has held that New Mexico courts must adhere closely to waiver as rule 11-511 defines and are not free to engage in ad hoc rule-making and waiver analysis as the parties may request.  See Public Service Co. v. Lyons, 129 N.M. 487, 492, 10 P.3d 166, 171 (Ct.App. 2000).  "A person who places privileged matters at issue in the litigation can said to have implicitly consented to disclosure." Id. at 892, 10 P.3d at 171 (internal citations and quotations omitted).  To determine whether a litigant has waived the attorney-client privilege, courts employ one of three methods: (i) the litigant automatically waives the privilege upon assertion of

a claim that raises as an issue a matter to which otherwise privileged material is relevant; (ii) the privilege is waived only when the material to be discovered is both relevant to the issues raised in the case and either vital or necessary to the opposing party's defense of the case; or (iii) a litigant waives the attorney-client privilege if, and only if, the litigant directly puts the attorney's advices at issue in the litigation.  See id. at 492, 10 P.3d at 171.  The New Mexico Court of Appeals has adopted the third approach and "recognize[d] waiver only where a party 'seeks to limit its liability by describing that advice and by asserting that he relied on that advice.'"  Id. at 495, P.3d at 171 (citing Rhone-Poulenc Rorer Inc. v. Home Indemnity Co., 32 F.3d 851, 863 (3d Cir. 1994)).  The issue  of  "waiver should be governed by, and limited to, Rule 11-511 (waiver of privilege by voluntary disclosure), in the absence of any other provision specifically addressing the issue."  Id. The attorney-client privilege should "act as a shield and not a sword" for the litigants.  Id. at 495.

## ANALYSIS

While the analysis for deciding what state law applies is not entirely clear, the Court and the parties agree that New Mexico's attorney-client privilege law applies to this diversity case.  Federal law, however, continues to govern issues related to the work-product privilege.  Because, however, Colorado Casualty has not supplied sufficient information for the Court to determine work-product issues, the Court will not at this time allow Colorado Casualty to withold any information pursuant to the work-product privilege.

## I.     STATE LAW APPLIES TO MATTERS OF ATTORNEY-CLIENT PRIVILEGE.

It is undisputed that state law applies to determinations regarding the attorney-client privilege in diversity cases.  See Fed. R. Evid. 501.  Both parties concede that it is appropriate to apply state law to attorney-client privilege issues.  See  Memorandum Brief to Court re Defendant's Claim of

Attorney-Client Privilege and Work Product, at 1-2 filed October 19, 2007, (Doc. 76)("Plaintiff's Brief"); Defendant's Memorandum Brief Regarding Attorney-Client Privilege and Work Product, at 1-2, filed October 22, 2007 (Doc. 77)("Defendant's Brief").  The issue is what state's law -- New Mexico's, Colorado's or some other state's -- applies to the privilege issues in this case.

At the October 9, 2007 hearing, the Court acknowledged that there was a question what state's law applied to the privileges, because there are lawyers involved in this suit that practice outside of New Mexico.  See Tr. at 33:16-34:4 (Court). The Court gave the parties permission to brief the issue which state's law applies.  Valencia's counsel stated that the Court should apply New Mexico attorney-client privilege law to the attorney-client communications in this case.  See Plaintiff's Brief at 2-5.  Colorado Casualty's counsel did not specifically address this issue, but indirectly consented to the use of New Mexico state law by citing to New Mexico rules and case law when dealing with the application of the attorney-client privilege in this suit.  See Defendant's Brief at 2-4.

The Court believes that it is proper to follow the Klaxon v. Stentor Electric Mfg. Co.  method and apply the choice-of-law rules of the forum state.  See Pepsi-Cola Bottling Co. of Pittsburgh, Inc. v. PepsiCo, Inc., 431 F.3d at 1253.  While the Court notes that the issues involving choice-of-law decisions in  Pepsi-Cola Bottling Co. of Pittsburgh, Inc. v. PepsiCo, Inc. were substantive issues, the language used by the Tenth Circuit suggests that the federal court should apply all of the forum state's choice-of-law rules regardless whether the issue is categorized as procedural or substantive. See id.

While the Second Restatement seems to categorize privileges as substantive opposed to procedural, the Supreme Court of New Mexico has not expressly adopted the Second Restatement.

-19-

Although the New Mexico Court of Appeals discussion in <u>Estate of Gilmore</u> regarding the categorization of an issue as procedural versus substantive is informative, the Court believes that the First Restatement, which the Supreme Court of New Mexico has adopted, suggests that attorney-client privilege is properly categorized as procedural.  <u>See</u> <u>United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.</u>, 108 N.M. at 469, 775 P.2d at 235.  Furthermore,  because privileges are generally treated as procedural under conflicts of law, <u>see</u> <u>Sun Oil Co. v. Wortman</u>, 486 U.S. at 728, and because all matters of procedure are governed by the law of the forum, <u>see</u> <u>Estate of Gilmore</u>,124 N.M. at 124, 996 P.2d at 1133, and because both parties have conceded that New Mexico law is the appropriate law for the Court to apply in regards to attorney-client privilege, the Court will apply New Mexico law to matters of attorney-client privilege.  Neither party has argued that the Court should consider the Second Restatement's approach in determining whether privileges are procedural or substantive.  Furthermore, the Court has not been provided with sufficient information, such as, what significant relationships a specific communication has with particular locations, for the Court to attempt to conduct a thorough determination under Restatement Second whether a specific communication would be privileged.  Unless either party brings a specific issue before the Court contending otherwise, the Court will apply New Mexico law to matters of attorney-client privilege.

## II.  COLORADO CASUALTY MUST PRODUCE THE DOCUMENTS AND INFORMATION THAT THE COURT DEEMS DISCOVERABLE.

At the October 9, 2007 hearing the Court gave oral orders for Colorado Casualty to follow regarding Valencia's motion to compel.  Because the orders were numerous and specific, the Court believes it is important to issue this written order to serve as a reference for both parties to ensure compliance with the orders and provide clarity for the parties.  Also, if Colorado Casualty fails to

comply with the Court's written order, Valencia will have a basis to seek contempt or other relief for the violation or noncompliance.

A.      VALENCIA'S REQUEST FOR PRODUCTION NO. 1.

First, for Colorado Casualty to rely on the work-product protection, it must supply more information about how it made its determination that such protection is appropriate in each circumstance.  The Court, therefore, orders that Colorado Casualty amend and supplement the privilege log to provide more information about all the instances of work-product protection that Colorado Casualty asserts.  Additionally, Colorado Casualty needs to supplement its privilege log with the date Colorado Casualty is contending the litigation was imminent and there was a substantial threat of litigation. See Tr. at 28:16-19.  Colorado Casualty will also need to provide the Court with specific information explaining why the date selected is appropriate.  See id.

In regards to all other issues related to request for production number 1, the Court will deal with the documents by their content categorization, as indicated on the privilege log, and then will deal with several documents individually.  See Privilege Log, Plaintiff's Exhibit 6.[2]  With regard to all of the items labeled on the privilege log as "correspondence," the Plaintiff needs to be provided with further information as to who received copies of each correspondence other than the individuals already indicated on the privilege log.

In regards to all documents categorized as correspondence, the Court believes that, if the correspondence is merely a forwarding letter, then it should be produced. See Tr. 27:1-8 (Court). If the correspondence has actual recitation of what the client said, however, then it may need to be

_____

[2]The privileges asserted for the first document and the fourth document  on the first page of the log are appropriately asserted and protections and will be upheld.  See Tr. at 21:21-22, 23:11 (Court).

-21-

redacted.  See id. Valencia, therefore, needs more information as to the contents of each of these documents. Specifically, as to item number 3 on the first page, which Colorado Casualty's counsel agrees is a cover memorandum, see Tr. at 22:20-22 (Court & Sparks), the Court orders more information to be provided and that Colorado Casualty's counsel disclose the form of correspondence, specifically whether it is an email.

In relation to the documents that are categorized as having "evaluation" content, Colorado Casualty must provide the opposing counsel with more information regarding who performed what evaluations and the nature of each evaluation.  Specifically, Colorado Casualty needs to provide information telling opposing counsel whether adjusters or lawyers completed the evaluations, and whether the evaluation is the normal task of an adjuster or of counsel.

In relation to any item on the privilege log categorized as a "diary entry," Colorado Casualty will need to provide the Court with specific information about the diary system.  The Court believes that it is highly unlikely that the attorney-client privilege will cover an entire diary entry and thus orders Colorado Casualty to review these documents and redact only those entries that the attorney-client privilege covers, which will likely be those comments that Mr. Ned Shepard made.  After Colorado Casualty's counsel makes his new determinations about what it should redact, the Court will consider all the diary entries under an in camera review.  See Tr. at 29:7-11.

Similarly, in relation to the items on the privilege log categorized as "notes," the Court believes that the privilege will not cover the entirety of such documents.  Colorado Casualty should review such documents and redact only the appropriate portions, such as those that would indicate Mr. Scott Lasater's comments.

In regards to the forwarding letters on page four of the privilege log, the Court believes that

Colorado Casualty's counsel needs to reconsider these documents.  The Court acknowledges that portions of the letters may be appropriate to redact, if something specific is being pointed out, but if they are just forwarding letters, then the attorney-client privilege does not cover them, and Colorado Casualty should produce them.  The Court believes that Colorado Casualty should redact only those portions of the documents, under attorney-client privilege, which reflect the language the attorney said or used, or Colorado Casualty's statements to its counsel.  The Court, therefore, is of the belief that the current redactions of most of the documents that Colorado Casualty has given to Valencia are overly broad.  See Tr. at 28:11-13 (Court).

The Court needs more information regarding the item on page five of the log entitled "Response to questions regarding handling of file."  At this time, the Court is uncertain whether this document is privileged and thus orders it to be submitted for in-camera review.  See Tr. at 30:5-16 (Court & Babich).

The Court requires further information about the document listed on page six of the log by Liberty RAM to John Derwin.  Colorado Casualty  needs to amend that entry and specifically explain if the people involved with the document are attorneys. See Tr. at 30:22-25, 31:1-7 (Court). Colorado Casualty's counsel should indicate throughout his amendments of the entire privilege log whether the individuals involved are attorneys.  If none of the individuals involved with a certain document are attorneys, Colorado Casualty needs to carefully consider whether the document is privileged.

Colorado Casualty must also produce to Valencia, or include on the privilege log, the two contracts to which Valencia referred during the October 9, 2007 hearing.  See Tr. at 36:2-13. (Babich & Court)

-23-

In summary, as to Request for Production Number 1,  the Court orders Colorado Casualty to amend its privilege log as the Court has indicated.  After Colorado Casualty's counsel reviews the diary system and the "Response to Questions Regarding Handling of File" item listed on page five, and reconsiders the redacted portions, the Court will review those documents in camera.  Tr. at 34:5-11 (Court).  The Court will reserve ruling on any document Colorado Casualty asserts is privileged under the work-privilege doctrine until Colorado Casualty provides further information to the Court.  All of the Court's orders must be completed within 10 days of the hearing.  See Tr. at 34:19 (Court).

Furthermore, the Court orders Colorado Casualty's counsel to pay the costs and attorney's fees that Valencia incurred in bringing this motion.  See Tr. at 34:19-22 (Court).  The Court reserves its ruling on the award of costs of the expert and asks the parties to discuss the appropriate amount, if any, when such information becomes available to the parties.  See Tr. at 35:1-10 (Court).  If the parties are unable to come to an agreement on the expert's costs, then Valencia needs to submit an affidavit from the expert and an affidavit from Valencia's counsel detailing the amount of wasted time and effort.  See Tr. at 35:10-15 (Court).  The Court is inclined not to grant any other sanctions at the present time.[3]

## B.      VALENCIA'S REQUEST FOR PRODUCTION NO 2.

Because this is a bad-faith action, the Court believes that Valencia is entitled to the information requested in request for production no. 2. Colorado Casualty does not have to produce

---

[3]The Court granted permission to both parties to supplement their prior filings with the Court concerning the issue whether New Mexico or Colorado law applies to the attorney-client privilege and how that effects Colorado Casualty's assertion of privilege.  See Tr. at 37:7-14 (Babich, Court & Sparks).  The additional supplements must be submitted to the Court within 10 days of the hearing.  See Tr. at 37:21-23 (Court).

-24-

anything that is specifically related to another file, but has to produce what Valencia has listed in its request that is of general applicability. See Tr. at 38:22-25, 39:1-6. (Court). The Court, therefore, orders Colorado Casualty to produce the appropriate documents under this request and awards fees on that request. See Tr. at 40:3-6 (Court).

### C.   VALENCIA'S INTERROGATORY NO. 3

Because Colorado Casualty adequately supplemented its answer to interrogatory 3 before Valencia filed his motion to compel, the Court will deny any further relief on interrogatory number 3. See Tr. at 41:6-10 (Court).

### D.   VALENCIA'S REQUEST FOR ADMISSION NO. 2

The Court believes that, at this point in time, it is not appropriate to order that request for admission number 2 be supplemented or deemed admitted. See Tr. at 44:17-25 (Court). If it is proven at trial that such request should have been admitted, then appropriate fees may be awarded at that time. See Tr. at 44:25, 45:1-2 (Court). The Court, therefore, denies the request as to request for admission number 2. See Tr. at 44:16-17 (Court).

### E.   VALENCIA'S REQUEST FOR ADMISSION NOS. 3, 4, AND 5.

The Court denies the request to do anything further with requests for admission numbers 3, 4, and 5. In regards to requests 4 and 5, there is currently a denial, so if the Plaintiff can prove these up at trial, the remedy will come at that point as opposed to any present remedy. See Tr. at 49: 7-10 (Court).

### F.   VALENCIA'S REQUEST FOR ADMISSION NO. 8

The Court orders that Colorado Casualty supplement its response to Request for Admission number 8 and provide an amended response to Valencia. See Tr. at 53:1-2 (Court). If Colorado

-25-

Casualty, in its supplemental answer, chooses to rely upon lack of knowledge or information, it must strictly comply with the requirements in rule 36(a).  <u>See</u> Tr. at 53:2-6. (Court).  Furthermore, because Colorado Casualty did not comply with rule 36(a), the Court will grant fees and costs that Valencia incurred in filing and arguing the motion to compel.  <u>See</u> Tr. at 52:7-9 (Court).

## G.   VALENCIA'S REQUEST FOR ADMISSION NOS. 19, 20 AND 21.

The Court orders Colorado Casualty to supplement its response to interrogatory number 2 as it relates to Valencia's request for admission numbers 19, 20, and 21.  <u>See</u> Tr. at 57:8-10 (Court). If Colorado Casualty finds that there are no documents to be produced regarding this request, then it can so state.  <u>See</u> Tr. at 57:12-14 (Court).

## H.   SCHEDULING MATTERS.

The Court orders that, consistent with what was stated at the hearing, the discovery deadline will be extended into November.  <u>See</u> Tr. at 73:4-9 (Court).  Furthermore, consistent with what was stated at the hearing, the Court notes that the deadline for both parties to file their motions for summary judgment is now November 30, 2007.  <u>See</u> Tr. at 75:25, 76:1-7 (Court).

**IT IS ORDERED** that the Plaintiff's Motion to Compel Discovery is granted in part and denied in part.  Colorado Casualty Insurance Company is ordered to provide, consistent with this opinion, complete supplemental responses and information to Plaintiff Gene Valencia's discovery requests.  Colorado Casualty Insurance Company is also ordered to provide the specific documents, as set forth in this opinion, to the Court for in camera review.  Colorado Casualty is also ordered to pay the costs and fees as indicated herein.  Colorado Casualty Insurance Company must provide the appropriate discovery materials to the appropriate party within ten days of the date of hearing.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Michael R. Huffaker
Law Offices of Michael R. Huffaker, P.C.
Farmington, New Mexico

-- and --

William Babich
Law Firm of William Babich, LLC
Denver, Colorado

 *Attorneys for the Plaintiff*

Seth L. Sparks
Wade L. Jackson
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

 *Attorneys for the Defendant*